I'm Jonathan Cohen on behalf of SEIU, Local 1107, and the individual union defendants. I want to make six points, answer any questions the panel has, and then reserve my time for rebuttal. First, let me set the stage. There's two cases we're talking about, your honors. The first I'll refer to is the Garcia case. It was filed in state court. The principal allegation was that SEIU representatives made misrepresentations to the Local 1107 Executive Board at its April 2017 board meeting. We removed that case to district court under Section 301 of the Labor Management Relations Act. The second case, which I'll refer to as the Mancini case, your honors, was filed in district court, was brought under the Labor Management Reporting Disclosure Act. There was two principal allegations that the former president of Local 1107 was unfairly disciplined and that the trusteeship itself was unlawful. The first point I want to make, your honors, is that the plaintiff's aim is that they were not given a fair opportunity to litigate their claims. I want to suggest just the opposite, your honors. They got five discovery extensions in the case. They brought four injunction motions, three of which were to stop the trusteeship. They filed two earlier appeals to this court in addition to the two appeals now pending, multiple motions for reconsideration, motions to compel discovery. And at the summary judgment stage, your honors, the court examined not only the allegations that weren't properly fled, and despite all of that, concluded that they failed to substantiate their claims. So I don't want the panels to have any reason to think they were denied a fair opportunity to litigate their claims. It was quite the opposite. Judge Gordon gave them every chance. The second point I want to make, your honors, they presented almost no evidence with their executive practice, just orders and motions. And only with their reply brief did they submit some evidence that was before the district court, hardly all of it. And there's two really important points I want to make here. First, we filed a motion to strike the evidence that was submitted with their reply brief, the corresponding arguments, because it's unfair. It disordered the appellate process they effectively raised in which it's on appeal. But there's a second point I want to make, and that's this. They've waived review of factual issues as a result. How could this court possibly examine any actual findings of the district court without any of the evidence that was before the district court? So really what the panel's limited to are legal, purely legal issues, and perhaps procedural issues. Third, with respect to the Garcia case, your honors, as I said, the core executive board meeting in April of 2017 and made misrepresentations to the executive board. And the ultimate resolution of that case was primarily dismissal, both for standing and on the merits. And here's the point I want to make. When the case began, there were two plaintiffs who were members of the former executive board, even though 29 people at that executive board, members of that executive board were present at the meeting where the alleged misrepresentations occurred. So you have two people at the outset of the case trying to champion a cause on behalf of 29 people who didn't participate in the case. And here's what's telling, your honors. Those two plaintiffs dropped out of the case. At the summary judgment stage, there were zero former board members as plaintiffs. And as the district court correctly determined, it created a standing problem and it created a merits problem. And I'm happy to get into either one of those issues if the court wants, but I think it's telling. The core allegation was that the former executive board was the subject of misrepresentations. And by the time of summary judgment, not a single former board member was part of the case. Fourth, I want to urge the court to review this case through the lens of what the Ninth Circuit has described as, quote, the well-established federal policy of avoiding unnecessary interference in the internal affairs of unions. That's a case, Kempster's Joint Council 42. It's reported at A2F3303. And in a related case, Motion Picture and Videotape Editors Bill Local 776, it's reported at 800F2973. The court said this, quote, disputes between an international and its locals are best left for internal settlement. Plaintiffs asked the court to do precisely the opposite and entangle the federal courts highly in a dispute that's already been resolved by the union through its internal process. The trusteeship is over. The local is back on its feet. New officers have been elected. And the plaintiffs are relentless in trying to entangle the federal courts in resolving something that, as I've said, the union has already analyzed and resolved internally. Let me ask you, counsel, about the part of the case that was remanded to state court. I think that's part of the claim one raised. What's the status of that litigation ongoing in state court on that claim? I'm glad you asked, Your Honor. The status is that it's been stayed. The party effectively told the state court to stay in proceedings, and the state court has agreed. And that's the subject of our request for judicial notice, is to bring the court's attention to the fact that nothing's happened on the state court remand since Judge Gordon's remand, precisely because we're here in the Ninth Circuit and hoping that it gets resolved here rather than in state court. Can you also address this question of preemption? Yes, Your Honor. I think what you're getting at is the principle issue the plaintiff's raising in the appeal, which is, does complete preemption apply to claims arising from an international union constitution? Is that right? Okay. So I'm glad you raised that. We think this is, although plaintiffs spend a substantial amount of time arguing that, we think it's really simple. Here's why. Under Woodell, Supreme Court's Woodell and Journeymen, it's clear that 301 jurisdiction applies to cases arising from disputes, you know, contracts between labor organizations. There's two types of contracts subject to 301, collective bargaining agreements, and contracts between labor organizations. In Woodell and in Journeymen, the Supreme Court makes very clear that 301 applies to contracts between labor organizations. That's the first principle. The second principle is that 301 is a complete preemption statute. That's the Avco case from the Supreme Court, but this court's jurisprudence on that is enormous. There's really no dispute. 301 is one of the few statutes that has the effect of complete preemption. So those two principles, there's 301 jurisdiction over claims arising from contracts between labor organizations, and two, preemption for cases arising under 301. It's a simple result here. Complete preemption applied to the claims in Garcia. They all arose from plans based on a contract with a labor organization, primarily the affiliation agreement between SEIU and Local 1107. You know, the other point here is every circuit to have looked at this, I think, beginning in 1990, agrees with our position. And, Your Honors, I think we cited two cases from the second, sixth, eighth, and eleventh circuits, all in agreement with our position. There's not a single court that's come to an opposite conclusion for good reason. And, of course, the plaintiffs don't cite any case law supporting their position. They're really asking the court to, you know, address this from first principles. And I think, you know, those first principles clearly support our position that the case is properly, the Garcia case is properly removed. I see Your Honors only have about a minute and 45 seconds. Unless there's any other questions, I'd like to save my time for rebuttal. You may. Thank you. Good morning, Your Honors. I'm going to start my argument out with the Section 301 issue. An application of state law is preempted by Section 301 of the LMRA only if the interpretation of a collective bargaining agreement is required. That was the express holding by the Supreme Court in Lingle v. Norrish, Division of Magic Chef, 486 U.S. 399. It is cited on page 31 of our brief. This court and the Supreme Court have never strayed from the rule that state law is preempted by Section 301 only if claims require interpretation of Supreme Court. Ultimately, appellant's entire argument hinges on an ambiguity in the Lewick case. That's claims substantially dependent on a labor contract are preempted. Appellants asked this court to interpret the labor contract language in Lewick to mean all contracts under Section 301 of the LMRA are preempted. Labor contract ambiguity, however, was clarified in Lingle, where the Supreme Court expressly held that state law is preempted by Section 301 only if interpretation of a CD is required. The court need look no further than the appellant's first brief on pages 19 through 23 to see this fact is true. They cite to this court's holding in Burnside replacing the term collective bargaining agreement with labor contract seven separate times. They cite to this court's holding in Adkins also replacing collective bargaining agreement with labor contract. Both of those cases cited Lingle with a rule that state law is preempted only if interpretation of a CDA is required. Judge McKeown and Judge Nguyen, you were part of the majority opinion in Alaska Airlines Incorporated v. Shurrock 898 F3D 904, where you cited to the Lingle holding stating that the Supreme Court has repeatedly instructed that RLA preemption, like the virtually identical preemption under Section 301, extends only as far as necessary to protect the role of labor arbitration in resolving collective bargaining agreements. Judge McKeown, you were also part of... I might remind you that the Alaska airline situation was quite a different situation. Yes, you are. I do understand that. It's the citation of the Lingle rule. And that rule was also cited by you in Slurry C.O.V. Labor's International Union and Kramer v. Consul Freightways. Since Lingle, the Supreme Court has never extended Section 301 preemption to any contract other than a CBA. Now, this is important because the defendants focus on the Waddell case. The Waddell case was after Lewick and after Lingle, but it is irrelevant to the preemption analysis. The only thing Waddell does is state that union members may sue for breach of a union constitution under Section 301 if it is considered a contract between labor organizations. It is not a preemption case. It is not a removal case. The case that held that union constitutions may be Section 301 contracts is Journeyman, which was held in 1981, seven years prior to the Lingle decision. This court must presume that the United States Supreme Court knew that union constitutions could be Section 301 contracts when it issued the holding in Lingle that state law is preempted only under Section 301 by Section 301. The only if language is mutually exclusive. It does not denote multiple options. If the court has any questions about what the Supreme Court's intent behind the only if language was, I direct the court to FLRA v. Aberdeen Proving Ground 485 U.S. 409, held in the same year as one of multiple options. If this court extends Section 301 preemption to union constitutions, it cannot be true that application of state law is preempted by Section 301 of the LMRA only if a CBA must be interpreted. To do so would be contrary to the Lingle decision. The Journeyman, Lingle, and Waddell cases are all consistent with our position in this appeal that for Section 301 to preempt state law, a CBA must be required to be interpreted. Not all contracts that could possibly be under Section 301. Additionally, if we counsel, if we disagree with that interpretation and find that Waddell and the other case law stands for the proposition that other types of agreements could be covered, for example, union constitutions and the like, would that then answer the preemption question in this case, essentially for the bulk of the case? If this court holds that all union constitution claims are preempted by Section 301, that would resolve that particular issue. But with regards to, but then that would get me get into the next issue about the anti-preemption savings clauses in the LMRDA. If this court holds that Section 301 was intended to preempt union constitution claims, any such operation of that statute was expressly, was impliedly repealed when Congress passed the LMRDA to include seven anti-preemption savings clauses preserving state law. The Lingle court, the Lingle decision. I just add that, you know, implied preemption, you know, it's not a favored route. Well, it's not a favored route for us to go in terms of implied preemption. And I read all of those very well laid out provisions, which don't seem to be convincing. So I want to just go back one step. When we talk about the constitution being, I won't say an agreement, a document that gives rise to preemption. Doesn't it really depend on how that document interfaces with conciliation or DDA or other agreements? It's not just a one size fits all. That is correct, Your Honor. It absolutely, it would not be a one size fit all, regardless of whether or not that can be considered preempted. It would not be a independent analysis based on how the facts are put. With regards to the LMRDA. I think that's, and I didn't ask my question well, but that's what I was trying to probe in terms of your position. If union constitutions can be covered, do these claims then depend on interpretation of those agreements? These claims would depend on the interpretation of provisions of the SEIU constitution. Yes, and the affiliation agreement as well. But such claims have been preserved to state courts by the LMRDA. And the Lingle decision is important to that argument as well, because in Lingle, the Supreme Court noted exceptions to section 301 preemption when Congress has affirmatively endorsed state remedies in a field that includes employment discrimination cases under Title VII of the Civil Rights Act. They cite to Title VII's broad anti-preemption savings clause in 42 U.S.C. 2000 E-7. That savings clause has identical language to the seven anti-preemption savings clauses in the LMRDA. And the case notes that when Congress has affirmatively endorsed state remedies in a field of labor law, that congressional intent must be honored. All preemption law is rooted in the principle that if intent of Congress is clear, that is the end of the matter, for the court must give effect to the unambiguously expressed intent of Congress. That is Chevron v. Natural Resources Defense Council, incorporated 467 U.S. 837. Here, Congress's intent is clear to preserve union member claims for breach of union constitutions in state court. In fact, the term constitution of any labor organization is included in one of the savings clauses in the LMRDA, that is 29 U.S.C. 413. It is clear that Congress intended to preserve such claims to union members in state court. Every title of the LMRDA has a savings clause because Congress was concerned with the expansion of preemption to other matters in the field of labor management and wanted to ensure that union constitution claims would not be preempted. Why is it not clearly expressed in this one? Why do we have to rely on implied expression? Because the appellants are asking you to imply preemption in this case. But as I have said, Congress has affirmatively endorsed state remedies in this particular area of labor law. And for that reason, implied preemption cannot be applied. The court has expressly disclaimed preemption of union member claims for breaches of union constitutions. Preemption of state law has expressly disclaimed preemption of such state law. So the earlier act cannot operate to circumvent the congressional intent in the later, more specific act where Congress has affirmatively endorsed such state claims. Thank you. Mr. Cullen? Thank you, Your Honor. I have very little time, so I want to make a few key points. There's a reason that every circuit that's addressed this has come to the conclusion that there's preemption here, because it's simple and straightforward. And what the plaintiff's counsel is asking you to do is take a position that no circuit has taken. I think there's an important point here. Judge Wynn asked, if 301 preemption applies, is there any argument that Judge Gordon wrongly applied 301 preemption principles to the first semantic complaint? And plaintiff's answer is no. So if preemption applies, there's no question the case is properly removed, etc. There's two types of contracts that are encompassed by 301, collective bargaining agreements and contracts between labor organizations. I want to make an important point here. We're not asserting that every claim on a union constitution subject to 301, because there's two types of constitutions, a local unions constitution, which the consensus among the courts is that's a contract between members and the union, and an international union constitution, which is a contract between a local union and an international union. That's the type of contract that's covered by 301, as is the affiliation agreement that's at issue here. That's a contract between local 1107 and the case law couldn't be clearer. In Waddell and in Journeyman, the Supreme Court unequivocally said that 301 embraces contracts between labor organizations. The statute says it. It's obvious. But nevertheless, we have two Supreme Court decisions affirming that. The other important point here is the court in both of those cases talks about the interests behind uniformity in federal labor relations law. And of course, that's the main... If the case that was remanded the state can't come back, is there a case in controversy here on that point? That, well, Your Honor, that's a complicated issue. It's a great question. I can tell you this. The order that we appealed was not the remand order. It was an earlier order in the case that happened two years before the remand order. So we think this court has jurisdiction to address it. Whether this court has jurisdiction to recall the state court case, I think, is much less clear. I think probably not, Your Honors. But if you reverse and remand it with instructions to the district court to dismiss the claim, I think this court has jurisdiction to do that. The claim's not there if it was remanded. Well, I think this court still has jurisdiction to address the issue because it is not there. It would be kind of like writing an advisory decision, wouldn't it? If we can't bring the claim back. Well, Your Honor, if this court has jurisdiction to address the order on the motion to dismiss, which is the order that we appealed, I think it can reach the 301 question. I think it's very clear that Judge Gordon erred in concluding it wasn't preempted. Again, I think had the district court correctly determined that there was 301 jurisdiction, it would have dismissed rather than remanded the case. I would hope the court has jurisdiction to do that in this case, but I understand the complexity of the situation. Thank you. Thank you, Your Honor. The case just argued, Garcia v. SEIU is submitted. Thank you both for the briefing and for the argument, and we're adjourned for the morning. Thank you. Thank you, Your Honor.
judges: McKeown, Nguyen, Vitaliano